**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRUCE TONEY,

    Plaintiff,

v.                                                Case No. 05-CV-74249

CITY OF DETROIT,
A Municipal Corporation et al,

    Defendants.
                                                    /

**OPINION AND ORDER DEFINING ISSUES
AND SCHEDULING A NON JURY TRIAL**

In a June 6, 2006 Order the court outlined four threshold issues which may be disputed in the present action: (1) whether the release, assuming its validity and enforceability, would constitute a complete bar to the instant litigation; (2) whether a meeting of the minds occurred with respect to the material terms of the release; (3) whether Plaintiff possessed the mental capacity to bind himself to the release[1]; and (4) whether the release was both procedurally and substantively unconscionable.  (6/6/06 Order at 2.)  The court ordered the parties to present arguments with respect to these four issues, including not only the application of relevant facts to the appropriate standards of law but also identification of who bears the burden of proof with respect to each issue and, additionally, whether each issue should be determined by the court or

---

[1]For reasons discussed below, the court has redefined this issue as "whether the release should be rescinded due to mental incapacity, misrepresentation, or overreaching."

by a jury. (*Id.* at 2.) Having reviewed the parties' briefs, the court issues the following order, which will provide an outline for how the contested issues will be determined.

## I. BACKGROUND

Plaintiff filed this action in Wayne County Circuit Court against the City of Detroit and several individual Police Officers and Supervisors alleging various violations of his constitutional, statutory and common law rights following his wrongful imprisonment for seventeen months. (Compl. at 1-2.) Plaintiff demanded a jury trial. (Compl. at 14.) Defendants removed the case to this court on July 23, 2004.

In their Answer, Defendants assert the affirmative defense that "the plaintiff's claims are barred by prior release." (Answer at 2.) Defendants provided a "Release and Agreement" form, signed by Plaintiff on June 3, 2005, releasing Defendants "from any and all liability, actions or claims" arising out of the incident upon which Plaintiff bases his legal claims. (Answer, Ex. A, at 1.) Plaintiff seeks to have the Release and Agreement rescinded or deemed unenforceable. The court now identifies the contested issues this Release and Agreement presents, determines if the issue should be decided by the court or by a jury, and identifies the applicable legal standards under Michigan law.

## II. DISCUSSION

### 1. Whether the Release, Assuming its Validity and Enforceability, Would Constitute a Complete Bar to the Instant Litigation

As previously noted by the court, "there is no dispute that Plaintiff signed a settlement agreement and release which, if enforced, would bar the instant action." (3/10/06 Order at 1.) Defendants cite this statement directly in their brief, and further

support this contention with applicable case law and relevant facts. (*See* Def.'s 6/30/06 Br. at 4-5.) Plaintiff does not dispute this point in his brief. (Pl.'s 7/19/06 Br..) The court takes Plaintiff's silence as agreement on this point, and determines that this issue is not disputed.[2] Assuming its validity and enforceability, the Release and Agreement signed by Plaintiff on June 3, 2005 will constitute a complete bar to the instant litigation.

### 2. Whether a Meeting of the Minds Occurred with Respect to the Material Terms of the Release

"It is fundamental that in order to form a valid contract, there must be a meeting of the minds on all of the material facts." *Stark v. Kent Products, Inc.,* 233 N.W.2d 643, 645 (Mich. Ct. App. 1975) (citing *Smith v. Neilan*, 205 N.W.2d 186 (Mich. Ct. App. 1973)). Defendants assert that the Release and Agreement evinces a meeting of the minds between Plaintiff and Defendants with respect to the material terms of the release. (Defs.' 6/30/06 Br. at 6-7.) In making this assertion, Defendants apply relevant facts to the appropriate standards under Michigan law to demonstrate that the material terms were included within the document which Plaintiff undisputedly signed on June 3, 2005. (*See id.*)

In response, Plaintiff argues only that "Toney never spoke with Defendants['] attorney, only with Ernsts' employees. They led him to believe he was signing a document to terminate fully their representation of him." (Pl.'s 7/19/06 Br. at 5.) Thus, Plaintiff appears to argue that there was no meeting of the minds because Plaintiff did not understand the nature of the document he was signing. This argument, however,

---

[2]Indeed, Plaintiff's counsel conceded this point before the court in statements made during a March 6, 2006 hearing. (*See* 3/10/06 Order at 1.)

simply does not address whether a meeting of the minds occurred with respect to the material terms of the release.  Michigan law provides that requiring a meeting of the minds "is only a figurative way of saying there must be mutual assent . . . [which is] judge[d] by an objective standard, looking to the expressed words of the parties and their visible acts."  *Goldman v. Century Ins. Co.*, 93 N.W.2d 240, 243 (Mich. 1958).  Therefore, "evidence of the unexpressed thoughts and understanding of the [parties is] inadmissible to establish their intent."  *Id.*  Thus, Plaintiff's assertion as to what Plaintiff thought he was signing is irrelevant to whether a meeting of the minds occurred.  *Id.; see also Stark,* 233 N.W.2d at 645 (citing *International Transportation Ass'n v. Bylenga,* 236 N.W. 771 (Mich. 1931)) ("One who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms.")*.*

      The court has provided Plaintiff with ample opportunity to present any theories relating to this issue, but the only argument which Plaintiff has presented does not address whether a meeting of the minds occurred.  Instead, the argument which Plaintiff makes relates, at best, to the issue of whether the Release and Agreement is unenforceable.  Therefore, the court finds this issue to be undisputed, and need not be submitted to a jury or to the court.

### 3. Whether the Release Should Be Rescinded Due to
### Mental Incapacity, Misrepresentation, or Overreaching[3]

Defendants contend that Plaintiff "is not entitled to rescind the Release and Agreement on the ground of his alleged lack of mental capacity when he executed it" because "he will not be able to show a mental disability of such severity as to justify a finding of soundness of mind or insanity." (Defs.' 6/30/06 Br. at 7, 8.) Defendant further asserts that Plaintiff "testified that he did perceive and understand the terms of the contract," and therefore his claim of mental incapacity must fail. (*Id.* at 8.) Plaintiff disagrees, arguing that his "mental capacity to understand was sufficiently compromised due to [a] combination of drugs he had ingested" for stress, anxiety, dyspnea, lower back pain, and lumbar disc hernia. (Pl.'s 7/19/06 Br. at 2, 4.) Plaintiff contends that "these medications would have the effect [on Plaintiff] of altering and impairing his ability to comprehend legal documents, and also impairing his judgment." (*Id.* at 2-3.) Because Plaintiff was under the influence of various medications when he signed the Release and Agreement, and also given the fact that the highest education Plaintiff completed was seventh grade special education, Plaintiff contends he was not of sound mental capacity and the agreement should be rescinded. (*Id.*) Plaintiff further contends that the Release and Agreement was not explained to him, was instead misrepresented to him, that he signed the document before reading it, and that Defendants

---

[3]Originally, this issue was defined as "whether Plaintiff possessed the mental capacity to bind himself to the release." However, in addition to his claim of mental incapacity Plaintiff, in his brief, also alleged that the nature of the Release and Agreement was misrepresented and that Defendant's conduct was overreaching. Since the relevant legal standard applies to all three of these grounds for invalidation, the court has re-defined the issue and will discuss it as such.

"overreached" to achieve the settlement.  (*Id.* at 5-6.)  The parties therefore are in disagreement as to this issue.  The court now determines how this issue will be resolved.

Plaintiff is seeking rescission of the signed Release and Agreement, which is equitable relief.  *See Ecco Ltd. v. Balomoy Mfg. Co.*, 446 N.W.2d 546, 548 (Mich. Ct. App. 1989)  ("[E]quity has jurisdiction where complete protection and relief requires the cancellation of written instruments, the rescission of a transaction, or other specific relief of an equitable character.").  Equitable claims do not present the right to a jury trial, but are instead to be determined by the court.  *Farwell v. Neal*, 198 N.W.2d 801, 803 (Mich. Ct. App. 1972) ("Vitiating an otherwise valid release on the basis of fraud in the inducement has historically been a chancery proceeding and thus no right to jury trial attaches to such an issue.").  Plaintiff's request for rescission of the Release and Agreement on the grounds of mental incapacity, misrepresentation and/or overreaching will therefore be decided by the court.

The court will determine if the release should be rescinded prior to the resolution of Plaintiff's legal claims in tort and constitutional law.  "'If the release is upheld [by the trial judge], that should end the matter.  If the release is held invalid, [P]laintiff may then proceed with [his] law action involving questions of [tort liability] and damages.'"  *Farwell*, 198 N.W.2d at 802 (quoting *Style v. Greenslade*, 12 N.W.2d 92 (Mich. 1961).  This process of resolving the equitable issue prior to the legal issue "is simply good judicial administration," and is common practice among Michigan courts.  *Id.* at 803.

In resolving this issue, the court will apply the relevant standards under Michigan law.  To be valid, a release must be "fairly and knowingly" made.  *Denton v. Utley*, 86

N.W.2d 537, 541 (Mich. 1957).  In determining whether rescission is proper, "the validity of a contract of release turns on the intent of the parties."  *Paterek v. 6600 Ltd.*, 465 N.W.2d 342, 344 (Mich. Ct. App. 1990).  In resolving the factual question of intent, the court will "consider all the circumstances surrounding the execution of the release, including the conduct and intelligence of the parties."  *Trongo v. Trongo*, 335 N.W.2d 60, 62 (Mich. Ct. App. 1983) (citing *Denton*, 86 N.W.2d 537).

Michigan law presumes the validity of releases, and Plaintiff will bear the burden of proving that the release is invalid.  *Kirl v. Zinner*, 264 N.W. 391, 392 (Mich. 1936) ("A settlement being once shown every presumption is indulged in favor of its fairness and correctness; and the burden of proving mistake, fraud, duress, or other facts relied on in avoidance of a compromise and settlement is on the party seeking to avoid the settlement." (citations omitted)).  Under Michigan law, a release is invalid if: "(1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct."  *Skotak v. Vic Tanny Int'l*, 513 N.W.2d 428, 430 (Mich. Ct. App. 1994) (citing *Dombrowski v. City of Omer*, 502 N.W.2d 707 (Mich. Ct. App. 1993)); *see generally Denton*, 86 N.W.2d 537.

Accordingly, the court will conduct a bench trial to determine the issue of whether the release is valid.  Plaintiff will bear the burden of proving that the release is invalid.

### 4. Whether the Release was Both Procedurally and Substantively Unconscionable

Defendants state that there "was no procedural unconscionability" in the forming and signing of the Release and Agreement.  (Defs.' 6/30/05 Br. at 9.)   Defendants

provide some relevant facts and applicable law to support this contention.  (*See id.*)  Defendants further assert that "substantive unconscionability is equally lacking" and detail ways in which the agreement was reasonable.  (*Id.* at 9-11.)  Although the court specifically directed the parties to brief this issue, and to include relevant facts and appropriate standards of law, Plaintiff asserts only that the "$60,000.00 [settlement amount] in this case is unconscionable."  (Pl.'s 7/19/05 Br. at 5.)  There thus appears to be a disagreement between the parties as to whether the release was procedurally and/or substantively unconscionable and will need to be determined by the appropriate trier of fact.[4]

As with the issue of whether the release should be invalidated, whether the release should be found to be unconscionable is an issue of equity and therefore a question of law for the court to decide.  *Northwest Acceptance Corp. v. Almont Gravel, Inc.*, 412 N.W.2d 719, 722 (Mich. Ct. App. 1987); *see also Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 323 (6th Cir. 1998) (citing *Citizens Ins. Co. of Amer. v. Proctor & Schwartz*, 802 F. Supp. 133, 143 (W.D. Mich. 1992)).

Defendant accurately cites *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471 (Mich. Ct. App. 2005) for the relevant standard which the court must employ in determining whether the release is unconscionable:

> In order for a contract or contract provision to be considered

---

[4]The court notes that this allegation will almost certainly not pass the two-part test, detailed above, required to invalidate a contract as unconscionable.  However, the court reads Plaintiff's brief generously and assumes an argument based on applicable Michigan law as to why the agreement was unconscionable will be presented.  If not, the court will determine that there is no genuine disagreement between the parties as to this issue as well.

> unconscionable, both procedural and substantive unconscionability must be present. *Northwest Acceptance Corp. v. Almont Gravel, Inc.,* 162 Mich. App. 294, 302, 412 N.W.2d 719 (1987). Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. *Allen v. Michigan Bell Tel. Co.,* 18 Mich. App. 632, 637, 171 N.W.2d 689 (1969).  If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. *Id.* Substantive unconscionability exists where the challenged term is not substantively reasonable. *Id.* at 637-638, 171 N.W.2d 689.  However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. *Gillam v. Michigan Mortgage-Investment Corp.,* 224 Mich. 405, 409, 194 N.W. 981 (1923).  Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience. *Id.*

*Clark,* 706 N.W.2d at 474-75.  Plaintiff, as the party seeking to be released from an otherwise presumably valid agreement will bear the burden of proving that the June 3, 2005 agreement was unconscionable.  *See, generally, Booth v. Booth,* 486 N.W.2d 116, 118 (Mich. Ct. App. 1992); *Coding Products, Inc. v. Hale Co. of Lower Michigan, Inc.*, No. 200406, 1998 WL 1997647, 4 (Mich. Ct. App. Feb. 27, 1998).

### III. CONCLUSION

The parties agree that, if valid and enforceable, the Release and Agreement will bar constitute a complete bar to the instant litigation.  Further, there is no material dispute that a meeting of the minds did occur with respect to the material terms of the release.  The parties disagree as to whether the release should be rescinded on the grounds of mental incapacity, misrepresentation, or overreaching.  This is an equitable issue that will be determined by the court according to the standards of Michigan law outlined above.  The parties also disagree as to whether the release was unconscionable.  Michigan law requires that this issue be determined by the court, and that both procedural and substantive unconscionability be found to invalidate the

release. Accordingly,

IT IS ORDERED that the court will hear argument on the issues set forth above, and will determine if the Release and Agreement should be enforced at a limited bench trial, which the court will conduct on **November 1, 2006 at 2:00 p.m.** The parties shall conclude any further discovery that is needed on these issues by **October 19, 2006.**[5]

At the November 1, 2006 bench trial, the parties should be prepared to present any witnesses or exhibits on which they will rely relating to the issues outlined above. If Plaintiff meets his burden and convinces the court that the release is unconscionable or should be rescinded, discovery related to Plaintiff's claims in tort and constitutional law will proceed. However, if Plaintiff fails to meet his burden and the court determines that the Release and Agreement is enforceable, it will constitute a complete bar to litigation and that will end the matter.

    s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: August 29, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 29, 2006, by electronic and/or ordinary mail.

    s/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

---

[5] Discovery at this point is limited to the issues outlined above regarding the validity and enforceability of the release. The court expects that most, if not all, of the necessary discovery related to the release has been completed. Nonetheless, the court recognizes that this order may have slightly altered the scope of the required discovery. **In the event any discovery disputes arise, the parties are directed to notify the court's case manager, who will schedule an immediate telephone conference.**

8/29/06:S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-74249.TONEY.OrderDefiningIssues.wpd